IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00150 SOM |
| Plaintiff, | ) ) ) | DECLARATION OF WESLEY H.L. CHOY |
| vs. | ) ) ) | |
| PATRICK SHIN,         (01) | ) ) | |
| Defendant. | ) ) ) | |

DECLARATION OF WESLEY H. L. CHOY

WESLEY H.L. CHOY declares as follows:

1. I am a mechanical engineer at the United States Navy Facility Command Hawaii, formerly known as the Public Works Center, Pearl Harbor, and have been so employed since August 1989. From October 31, 2005 to the present, I have served as temporary supervisory mechanical engineer, where my duties include overseeing various projects involving mechanical systems. As a mechanical engineer, my duties included designing and reviewing mechanical systems, preparing drawings, specifications and cost estimates, providing technical review of contractor cost proposals, assisting the Resident Officer In Charge of Construction (ROICC) in negotiating costs with contractors, and reviewing show drawings and technical data submitted by contractors to ensure conformance with plans and specifications.

2. In May 2002, I was assigned to prepare the Navy's government estimate (GE) for a potential contract for the

overhaul of Pump #1, Dry Dock #4 at the Pearl Harbor Naval Shipyard. A GE is intended to reflect the probable cost of a project. A Navy client, such as Pearl Harbor Naval Shipyard, uses the GE to allocate sufficient funds to complete the job. The amount of the contract is ultimately negotiated with the contractor. The contractor must submit a bid, which is reviewed by the Navy engineering department for technical compliance. With the input of Navy engineering, the Resident Officer In Charge of Construction (ROICC) awards contracts and determines the final prices. A contract price may be higher or lower than a GE, depending upon the negotiations and data submitted by a contractor.

3. I was lead engineer on a team of government personnel assigned to prepare a GE for the work at Pump #1, Dry Dock #4. We prepared a June 5, 2002 GE estimating the likely costs as $1,223,117.

4. In August 2002, the Navy entered a contract with JHL Construction, Inc. (JHL) for the work on Pump #1, Dry Dock #4, and agreed to a price of $2,355,745. Prior to the negotiations, the Navy suggested that JHL consider using Civil Mechanical Contractor (CMC) as a subcontractor, as CMC had experience in performing other work at dry docks at the Pearl Harbor Naval Shipyard. JHL thereafter supported its contract proposal with a quotation from CMC in the amount of $2,054,100.

5. In June 2003, I was asked to prepare a GE for the overhaul of Pump #2, Dry Dock #4 at the Pearl Harbor Naval Shipyard. The scope of work of that job was the same as the work on Pump #1, Dry Dock #4, which the government had estimated at $1,223,117. I understood that ROICC had signed a contract with JHL for $2,355,745, based in part on CMC's subcontractor quotation of $2,054,100. I also understood that, following the award of the contract, JHL had switched subcontractors from CMC to Marisco, and then from Marisco to HSI Electric and Alfred Conhagen, Inc. I assumed that JHL had obtained price reductions, but did not know the amount of the reductions. In preparing the GE, the team thus relied largely upon the contract price for the first job, and calculated the probable cost of the job at Pump #2, Dry Dock #4 as $2,211,250.

6. On August 14, 2003, JHL submitted a proposal to do the work at Pump #2, Dry Dock #4 for a price of $2,360,153. I was asked to review the proposal for technical compliance and price. I felt the proposal was questionable because many costs were aggregated, and there was no data supporting the subcontractor costs. I therefore asked ROICC to obtain a line item breakdown, or copies of the subcontractor quotes to substantiate the proposal.

7. On August 26, 2003, Patrick Shin gave the government a new cost proposal for Pump #2, which reflected a

3

reduced price of $2,205,138. On August 29, 2003, I forwarded technical comments on the proposal to ROICC. I knew that JHL would be doing the work on both Pumps #1 and #2. Since I anticipated that JHL would complete the work on Pump #1 before starting on Pump #2, I felt its proposal on Pump #2 should be lower to reflect an increased familiarity with the nature of the work. I also had learned that JHL was using HSI and Conhagen, and asked ROICC to obtain copies of their quotations to JHL.

    8. On September 3, 2003, ROICC advised me that JHL wanted to have a meeting to discuss the proposal.

    9. On September 8, 2003, I attended a meeting with Shin, Willy Talion (a JHL representative), and a representative of ROICC. JHL's proposal at the time was for $2,205,138. At the meeting, Shin provided subcontractor quotations from HSI and Conhagen totaling $916,699. I told Shin that the quotations covered the bulk of the work and that, given the amount of its cost proposal, JHL was likely to obtain almost $1.3 million for doing their portion of the job. Shin responded that he had other work to perform, including shipping the pump to the mainland for overhaul, and that he had a zero coefficient on the job. Shin then asked the government officials how much the job should cost. I responded that he was the contractor, and that he should submit his best and final offer.

4

10. On September 8, 2003, after the meeting, JHL submitted a cost proposal for $2,150,000, which it said was its best and final offer.

11. I understand from criminal investigators that Shin gave the Navy subcontractor quotations from HSI and Conhagen which had been inflated by $380,000. Even with the inflated quotations -- which totaled $916,699 -- I felt JHL could not justify its bid of $2,150,000. Had JHL disclosed that its actual subcontractor costs on Pump #1 would be $537,000, the GE for Pump #2 would not have been $2,211,250. The GE would instead have been much closer to the $1,223,117 figure which was originally estimated for the work on Pump #1.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Dated: Honolulu, Hawaii, February 6, 2006.

_____
WESLEY H.L. CHOY