ORIGINAL

SAMUEL P. KING, JR. 1396
735 Bishop Street, Suite 304
Honolulu, Hawaii 96813
Tel. No. 521-6937

Attorney for Defendant

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 3 2006

at __1__ o'clock and __55__ min. __P__ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Cr. No. 04-00150 SOM |
| | ) |
| vs. | ) 18 USC 1001(a)(3) |
| | ) |
| PATRICK SHIN (01), | ) |
| | ) DEFENDANT'S SENTENCING MEMORANDUM |
| Defendant. | ) |
| | ) |

DEFENDANT'S SENTENCING MEMORANDUM

Introduction - Sentencing Must Be Imposed Pursuant to the Requirements of 18 USC 3553(a)

Since the Supreme Court's *Booker* and *Fan Fan* decisions, the Federal Sentencing Guidelines are no longer mandatory. Sentencing is now controlled by 18 USC 3553 which states as follows:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

CERTIFICATE OF SERVICE ATTACHED

>    (3) the kinds of sentences available;
>    (4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines – (I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>    (5) any pertinent policy statement – (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentence.
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    (7) the need to provide restitution to any victims of the offense.

Subparagraph (a)(2) sets forth the four classic considerations for a just sentence: punishment, deterrence, rehabilitation, and protection of society. Within this framework, the court must consider as background "the nature and circumstances of the offense" and the "characteristics of the defendant." The specific terms of the sentence are then based on the kinds of sentences available, the Guideline calculation, the need to avoid sentencing disparity among similar defendants convicted of similar conduct, and the need to provide restitution. As stated above, 18 USC 3553(b) which required a sentence within the Guideline range is no longer applicable after *Booker* and *Fan Fan*. The Guideline calculation is one factor among many factors listed under 18 USC 3553(a) to be considered by the court. One of the great failings of the Guidelines is that it eliminates from consideration in Part H (Specific Offender Characteristics) factors about a defendant and his background which most courts normally consider in the overall sentencing determination such as: age; education and vocational skills; mental and emotional condition; physical condition; employment record; family ties and responsibilities; military, civic, charitable, or public service; employment-related contributions; record of prior good works; and lack of as a youth and similar

2

circumstances (like a disadvantaged upbringing). This failing is thankfully significantly eroded by the requirement of 18 USC 3553(a)(1) that the court consider the "defendant's characteristics" as part of the sentencing calculus and the fact that the Guidelines are no longer mandatory. Consideration of a defendant's "characteristics" allows for individualized sentencing.

Finally, 18 USC 3553 calls for a sentence that is "sufficient, but not greater than necessary" to comply with paragraph (2) which contains a statement of the four classic considerations for a just sentence.

Sentencing Under 18 USC 3553(a) Applicable to Defendant

With the principles set forth in 18 USC 3553(a) as set forth above, what should the appropriate sentence for Defendant be in this case which is "sufficient, but not greater than necessary" to comply with the four classic sentencing factors of punishment, deterrence, rehabilitation, and protection of society, and the need, if any, to provide restitution? Clearly, there is no issue of "restitution" in this case. There was no "actual loss" to the Government in this case because the Drydock 4, Pump 2 contract was never executed or paid. The Government is not making any serious argument, as far as Defendant knows, that "protection of society" is an issue in this case. The issues of punishment, deterrence, and rehabilitation remain based on the background of "the nature and circumstances of the offense" and the "characteristics of the defendant."

The Nature and Circumstances of the Offense. Of all the issues raised in this case, this is the one most hotly contested by the parties. The issue is one of *intention*. What was Defendant's intent when he asked subcontractors HSI and Conhagen to increase their price quotations. Defendant has shown by extensive briefing in three separate briefs constituting more than 80 pages that the facts clearly show that Defendant has no intent to "defraud" the Government or "steal" any money from the Government. As James Gordon stated in his Declaration, Defendant was "good-intentioned"

3

when he acted to close negotiations between JHL and the Government in time to encumber funds for the Drydock 4, Pump 2 job before the end of the Government's fiscal year, but the method Defendant chose was "bad practice." If the Drydock 4, Pump 2 contract had been negotiated for a contract price at JHL's best and final offer of $2,150,000, this would have been a fair price for both sides with no "loss" to the Government.

The Government's attempt to convince this Court that Defendant had an "intent" to "defraud" the Government is completely unavailing. This is especially and painfully obvious in the Government's last Memorandum filed in this case in which the Government argues, based on information provided to the Government by its engineer, Wes Choy, that JHL was hiding a "profit" of over $1.5 million. As Defendant's Response points out, this position of Wes Choy is totally false.

Defendant clearly violated the simple prohibition of 18 USC 1001 when he changed the HSI bid, but this only involved Defendant's "good-intentioned" "intent to deceive" and did not involve the more serious "intent to defraud." Defendant, by the testimony of the senior Government contract officials, Robert Hokama and Brian Sekiguchi, was an excellent contractor who provided consistent high-level performance for the Government. Defendant was described by these gentlemen as the "go-to" contractor for difficult jobs. Defendant spent fifteen years of his business and professional life serving the Government, not "defrauding" the Government. Defendant is being sentenced in this case for "bad practice," not theft or fraud.

The Characteristics of the Defendant. Defendant was born in a one-bedroom mud hut in Buyea, South Korea, and was raised in the grinding poverty of peasant farm life. His family was so poor that two of his older brothers died because his mother could not provide enough milk to nurse them. By providence, Defendant's family was able to move from Korea to Guam and eventually to the United States. By sheer hard work and talent as a soccer player, Defendant was able to obtain

4

a college education at Bowling Green. Defendant continued to work hard after college graduation in his brother's fish business in New York and eventually in Defendant's own contracting business in Hawaii.

Defendant started his contracting business as a sole proprietor under the name of Ocean House Builders. His initial capital was a few thousand dollars, and his initial jobs involved refurbishing bathroom at military bases. Again by hard work and entry into the SBA's minority 8(a0 program, Defendant began to build his contracting business. Ocean House Builders became Nan, Inc. After only a few years in the 8(a) program, Nan, Inc. "graduated" out of the program because Nan provided excellent service to the Government, and the government contracting officers began to request Nan's services on more and more jobs. The demand for Nan's services increased the volume of its business with the Government beyond the small business limitations. Nan, Inc. was the largest non-union contractor in the State of Hawaii. Defendant was extremely successful in building Nan, Inc. by working hard and satisfying its government customers. Defendant was not an "easy chair" owner of Nan, Inc. He was out on job sites with his employees every day at 5:00 in the morning and personally directing jobs until 7:30 at night and often later six days a week. Defendant gained a reputation with the highest Government officials as an excellent contractor providing excellent service, the "go-to" man for difficult jobs. Defendant has supplied to this Court hundreds of award letters and evaluations of excellence from the various government agencies with which Nan dealt. These awards and evaluations led to Defendant's being selected by the SBA as the Small Businessman of the Year for Region 9 in 2000.

Defendant is now 41 years old. He married his wife Mariko in 1996, and they have two young daughters, Sherry and Mary, ages 6 and 4.

Defendant's mother, who is now 84 years old, suffers from diabetes and kidney failure and

must undergo kidney dialysis three times per week at St. Francis Hospital. Defendant spends many hours per week driving his mother to and from doctor appointments and dialysis treatment and caring for her. Defendant is also the sole support of his parents and his brother Austin in New York who has cancer.

Of course, Defendant has not criminal history except for a fight in which he was involved in college.

Punishment and Deterrence. Defendant has already suffered significant punishment in this case. He has lost his reputation in the community and with the Government contracting officials he served so well for so many years. He has been barred from being involved in any way in his own business for a period of three years pursuant to an agreement worked out between the Department of Defense and Nan, Inc. After sentencing, Defendant will be debarred for an additional five years after the date of sentencing in this case and will be unable to be involved in any federal government contracting whatsoever during this period of time. Because of Defendant's debarment, he has personally lost millions of dollars and his company, Nan, Inc., has lost millions of dollars of contracts and lost the ability to earn the kind of profit it was able to generate under Defendant's control. Of course, Defendant has a felony conviction on his record. He has also suffered the anxiety of waiting for sentencing for almost two years largely for reasons beyond his control, especially because of the Supreme Court's decisions regarding the Sentencing Guidelines and the original ASUA in this case, Mike Seabright, becoming a federal judge.

Considering Defendant's extreme punishment already in this case, the nature of the offense, and Defendant's background and characteristics, there is no justification for a sentence which includes a term of imprisonment as Defendant anticipates the Government will be arguing. This is not a theft case. Defendant had no intention to "defraud" the Government or "steal" from the

6

Government. This case arose from an unfortunate and unique situation which began with the Government's improper assignment of the Drydock 4, Pump 2 job to a 0% JOC contract and ended with Defendant's "good-intentioned" but inappropriate response to the Government's denial of reasonable profit and overhead to JHL because of the 0% coefficient. To the extent that an example needs to be set that Defendant's conduct was "bad practice," this point has already been made by Defendant's felony conviction and debarment - the need for deterrence already exists without imposition of a prison sentence. A prison sentence would only pile punishment on top of a man who has been punished enough by loss of reputation, loss of income, loss of control of his own company, debarment, and more. It would also unnecessarily hurt people who rely on Defendant for his emotional support - his wife, his two young daughters, his parents, and his brother. There is simply no justification for a prison sentence on top of the punishment already suffered by Defendant and the deterrence effect which has already been obtained by Defendant's conviction and debarment.

An appropriate sentence in this case would involve a fine, community service, and a requirement that Defendant support educational seminars regarding government contracting which he has already started for the benefit of other contractors, especially 8(a) contractors, in Hawaii.

Rehabilitation.

In this case, as has already been set out in Defendant's Sentencing Statement, Defendant inappropriately engaged in conduct during negotiations with the Government, in reaction to a very difficult negotiation situation, which Defendant admitted from the first day he was questioned by the FBI, to change of plea, to now, was wrong. In order to rehabilitate himself and become much more conversant with the law and regulations applicable to contracting and negotiating with the United States Government, Defendant undertook an extensive course of education. From July 19 to July 23, 2004, in Arlington, Virginia, Defendant attended the George Washington University's School

of Business and Public Management's Negotiation Strategies and Techniques course, From July 26 through July 30, 2004, Defendant attended GWU's Federal Contracting Basics course. On September 22 and September 23, 2004, Defendant attended a course on Defective Pricing given by Federal Publications Seminars in Washington, D.C. (Defendant's graduation certificates from theses courses are attached as Exhibits A-C to Defendant's Motion for Downward Departure.) This writer attended all the courses with Defendant, two-and-one-half weeks of seminars in all. As this writer attended the seminars with Defendant, he can attest to the fact that the seminars were extremely helpful and productive. Much of what this writer learned about United States Government contracting was incorporated into Defendant's Sentencing Statement. Defendant expressed to this writer that he wished he had attended courses like this prior to this case, and he is certain that he would have had the tools necessary to deal with the situation in which he found himself in the negotiations in this case without having gone astray.

As a follow-up to his attendance at the courses, Defendant realized that contractors in Hawaii, especially the small business 8(a) contractors, should have the benefit of the information he obtained in the courses, especially as they related to negotiating with United States Government. Because Defendant still has a close bond and feeling of kinship with 8(a) contractors, he wanted them to be advised of what techniques are and are not appropriate in negotiating and contracting with the United States Government. He decided to sponsor a seminar on "Ethics in Government Contracting" for all Hawaii businesses, but especially for the 8(a) contractors. He obtained the assistance of Brian Darst, a Washington attorney very experienced in legal matters involving government contracting, and Mr. Darst created a half-day seminar for the businesses in Hawaii. (Mr. Darst's seminar materials are attached to Defendant's Motion for Downward Departure as Exhibit D.) Defendant paid for Mr. Darst's time in creating the seminar and coming to Hawaii in 2005 to

8

conduct it. Defendant was quite active in the 8(a) community promoting the seminar and strongly advising the 8(a) contractors to attend so that they would be knowledgeable regarding the legal limits of negotiating with the United States Government. The seminar was attended by about one hundred 8(a) contractors. The seminar was conducted through the Hawaii Chapter of ABC, the Associated Builders and Contractors, Inc., a national organization. Although Defendant funded the entire seminar, this was not revealed publically - Defendant was not seeking personal credit, he was concerned for Hawaii contractors, especially the 8(a) contractors. The seminar was well-attended and well-received. Defendant plans to continue the seminar on a yearly basis and is certain that the knowledge provided to Hawaii contractors, especially the 8(a) contractors, will be immeasurable and will create a much healthier negotiating climate between the United States Government and Hawaii contractors, especially the 8(a) contractors.

Defendant had been substantially benefitted by the courses he has taken, and he has done his best, and will continue to attempt, to enrich the contracting community with the knowledge he has gained, especially for the 8(a) community.

Prior to Defendant's entering into his Administrative Compliance Agreement with the Government (as described in Defendant's Sentencing Statement) which does not allow Defendant to have any direct involvement in his own company, Nan, Inc., for a period of three years, Defendant set up a stringent ethics code and reporting system within the company.

As part of a rehabilitation program for sentencing, in addition to what Defendant has already done for himself, the Court might consider ordering Defendant to continue to sponsor seminars on government contracting as Defendant has already begun to do.

Conclusion

Based on the foregoing, Defendant suggests that the appropriate sentence in this case would

consist of a fine, community service, and a requirement that Defendant support educational seminars regarding government contracting. There is no justification of an additional requirement that any prison sentence be imposed on Defendant.

18 USC 3553 calls for a sentence that is "sufficient, but not greater than necessary" to satisfy the four classic considerations for sentencing: punishment, deterrence, rehabilitation, and protection of society. As mentioned above, Defendant's punishment has been extreme already, the deterrent effect of Defendant's conviction and debarment is clear in this community, and Defendant has already begun an extensive program of self-rehabilitation and service to the community. Protection of society is not an issue for sentencing in this case. The sentence proposed by Defendant here is certainly sufficient to satisfy all the considerations of sentencing. An imposition of a prison term in this case would be far "greater than necessary" to satisfy these considerations. Defendant's acceptance of responsibility is clear in this case and the sentence imposed should reflect Defendant's acceptance of responsibility and self-rehabilitation.

DATED: Honolulu, Hawaii, February 23, 2006.

_____
SAMUEL P. KING, JR.
Attorney for Defendant

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon the United States Attorney at 300 Ala Moana Blvd., Honolulu, Hawaii, on February 23, 2006.

DATED: Honolulu, Hawaii, February 23, 2006.

_____
SAMUEL P. KING, JR.
Attorney for Defendant